STUMPF v. A. SCHREIBER BREWING CO.

(District Court, W. D. New York.   May 5, 1917.)

No. 160–B.

1. WAR ☞10(2)—CIVIL RIGHTS AND REMEDIES—SUSPENSION OF PROCEED-
INGS.
   A plaintiff, who becomes an alien enemy, cannot continue an action at
law or in equity, or institute further proceedings in the courts, until
the war is ended, save in certain exceptional instances.
   [Ed. Note.—For other cases, see War, Cent. Dig. §§ 31–36.]

2. WAR ☞10(2)—CIVIL RIGHTS AND REMEDIES—SUSPENSION OF PROCEED-
INGS.
   A German subject, residing in Germany and owning a patent, author-
ized an American citizen to grant licenses for the manufacture, sale, and
use of engines embodying the patented devices, and to receive for his
services as sales agent one-half of the receipts from licenses and royal-
ties; the agency to be irrevocable during the life of the patent.   There-
after he executed a power of attorney to such sales agent, authorizing
him to sue for infringement of the patent.   Suit was brought in the
patentee's name, resulting in a decision in his favor, on which no decree
had been signed or entered prior to the President's war proclamation.
Held, that the sales agency agreement did not operate as an assignment
of the patent, and a suspension of proceedings could not be denied on the
theory that the sales agent was the real plaintiff, and the patentee only
a nominal plaintiff.
   [Ed. Note.—For other cases, see War, Cent. Dig. §§ 31–36.]

In Equity.   Suit by Johann Stumpf against the A. Schreiber Brew-
ing Company.   On motion for suspension of proceedings pending the
war with Germany.   Motion granted.

Philipp, Sawyer, Rice & Kennedy, of New York City (Cleon J.
Sawyer and J. J. Kennedy, both of New York City, of counsel), for
plaintiff.

William Macomber, of Buffalo, N. Y. (George E. Tew, of Wash-
ington, D. C., of counsel), for defendant.

HAZEL, District Judge.   The complainant herein, Johann Stumpf,
resides in Berlin, Germany, and is a subject of the emperor of Ger-
many.   On March 3, 1913, he executed a power of attorney in writing
to Edward N. Trump, a citizen of the United States, authorizing and
empowering him to bring and conduct this action for infringement of
United States letters patent No. 1,042,168 against the defendant cor-
poration, a citizen of the United States residing at Buffalo, N. Y.
Neither the power of attorney nor the prior agreement of November
15, 1912, between Stumpf and Trump, read on this motion, conveys
any interest, title, or ownership of the Stumpf patent in suit, but mere-
ly comprehensively imparts the right to grant licenses for the manu-
facture, sale, and use in the United States, Canada, and Mexico of
uniflow engines, embodying the patented improvements and including
accessories, for which he or his assigns, the Stumpf Uniflow Engine

Company, was to receive for services as sales agent one-half of the total amount received from licenses and royalties, the remaining one-half to be paid to Stumpf until he had received one-half of the expense of bringing the patents to issue in the United States, Canada, and Mexico. The sales agency was to be irrevocable during the life of the patent. This suit was instituted by Stumpf in his own name, and the action was decided in his favor; the decision being announced prior to April 6, 1917, the date of the proclamation of the President declaring the existence of a legal war between the United States of America and the Imperial German Government. No decree has as yet been signed or entered.

The general rule of the common law of England is that an action is not maintainable during the continuance of a war by or on behalf of an alien enemy without the permission of a statute, proclamation, letters of safe conduct, or license from the king. This rule was rigidly followed for centuries before the War of 1812 between the United States and England. A few exceptions to this rule were later recognized and applied by the courts of England, as, for instance, where commerce was continued among the nations at war, or where the plaintiff in actions for debt became an alien enemy after verdict and judgment. In such cases, contracts and suits at law based upon them were permitted by international law, as distinguished from the common law, and the sole inquiry was whether the plaintiff was persona standi in judicio, and, if he was, according to the broad doctrine of Bynkershoek, the courts were open to him to redress his grievances.

In Crawford v. The William Penn, Fed. Cas. 3,372, Circuit Justice Washington in the year 1815 approved the strict rule of the common-law courts of England, and the syllabus states that an alien enemy, if beneficially interested in the suit, could not maintain it even by his trustee, who was not an alien. In Mumford v. Mumford, Fed. Cas. 9,918, decided in 1812, it was broadly held in a suit in equity that the complainant, a subject of the United Kingdom of Great Britain and Ireland, had become an alien enemy resident within the realm since the suit was begun, and that therefore the courts of this country were not open to him. In Hangar v. Abbott, 6 Wall. 532, 18 L. Ed. 939, an action brought after the Civil War on a debt, the defendant pleaded the statute of limitations, and the question arose whether the statute of limitations was suspended during the time the courts of the seceding states were closed to citizens loyal to the Northern States. The Supreme Court says:

"War, when duly declared or recognized as such by the war-making power, imports a prohibition to the subjects, or citizens, of all commercial intercourse and correspondence with citizens or persons domiciled in the enemy country. Upon this principle of public law it is the established rule, in all commercial nations, that trading with the enemy, except under a government license, subjects the property to confiscation, or to capture and condemnation."

In Caperton v. Bowyer, 14 Wall. 216, 20 L. Ed. 882, the Supreme Court stated that the rule that, subsequent to the commencement of hostilities, enemy creditors were incapable of prosecuting *any action in the tribunals of the other belligerents until after the restoration of peace* was universal and peremptory. See, also, Levy v. Stewart, 11

242 F.—6

Wall. 244, 20 L. Ed. 86; Hutchinson v. Brock, 11 Mass. 119; Bell v. Chapman, 10 Johns. (N. Y.) 183.

It is true, as contended, that in the year 1808 in England the court refused to stay a judgment and execution in Vanbrynen v. Wilson, 9 East, 320, which was an action at law, on objection that plaintiffs after verdict became alien enemies; but I do not understand from that decision that the principle of Le Bret v. Papillon, 4 East, 502, enunciated in 1804, that an action commenced by a plaintiff who afterwards becomes an alien enemy cannot be continued during the war, has been overruled. A number of analogous cases have arisen in England since the beginning of the present war, and it has been quite uniformly held that actions instituted by plaintiffs afterwards becoming alien enemies must be suspended until peace is declared. Actien Gesellschaft für Anilin Fabrifation in Berlin and Mersey Chem. Works, Ltd., v. Levinstein, Ltd., [1915] W. N. 85; Porter v. Freudenberg, [1915] 1 King's Bench, 857. Complainant contends that the suspension of these cases, or some of them, after the declaration of war, was due to the enactment by Parliament of the Trading with the Enemy Acts and Orders in Council on September 9, 1914, but I do not so understand.

[1, 2] The decisions of the courts of this country herein cited seem to me explicitly to determine that a plaintiff who becomes an alien enemy cannot continue an action, either at law or in equity, or institute further proceedings in our courts, until the war is ended, save in exceptional instances, as, for example, where commerce is continued between the nations at war, or where it is shown that the alien enemy is only a nominal plaintiff, or the coplaintiff of a nonbelligerent, who is a substantial plaintiff, or a denizen or inhabitant of the United States. Actien Gesellschaft, etc., v. Levinstein, Ltd., supra. Hence, if Stumpf was merely the nominal plaintiff herein, and a citizen of this country was the actual plaintiff, this action should not be suspended. The argument upon this point is that the sales agreement with Trump operated as an assignment of the patent in suit, but with this view I do not agree.

The agreement plainly created an agency to grant licenses to manufacturer and vend the improved engines, nothing more. It makes no difference that by its terms it was irrevocable between the parties. It certainly did not carry with it the right to enforce a monopoly in equity in the name of an alien enemy and to prosecute an accounting for the recovery of profits, a proceeding which might necessitate communication with Stumpf, or even the taking of testimony in Germany. Besides, in my opinion, it is doubtful whether the agency agreement in question continues operative, regardless of the intentions of the parties thereto.

Fritz Schulz, Jr., Co., Inc., v. Raimes & Co., 164 N. Y. Supp. 454, an action for debt recently decided by Judge McAvoy of the City Court of New York, is distinguishable from the present case, as there the plaintiff was an American company. Suspension of the action was asked during the war on the ground that the shareholders of the company were mostly alien enemies, but the court properly held that, as the plaintiff was incorporated here, it was a citizen of the state in which it was incorporated, and an entity apart from its shareholders.

The motion is granted, and the proceedings herein are suspended until the United States of America shall establish a condition of peace with Germany. So ordered.