It is therefore adjudged that the appeal herein be dismissed.

---

(44 South. 260.)

No. 16,332.

MAYVILLE CANAL CO., Limited, v. LAKE ARTHUR RICE MILLING CO., Limited.

(March 18, 1907. On the Merits. May 27, 1907. On Rehearing, June 17, 1907.)

On Motion to Dismiss.

1. APPEAL—CITATION—SERVICE.

There was a continuous session of court to August 8, 1906.

On that day an appeal was granted in open court.

The court, in accordance with, and as possible under, its order regarding its terms, could sit in continuous session.

If there was a subsequent term, the appeal was made returnable on the 29th of September, 1906.

From the later date time was extended to October, 1906.

A citation of appeal was duly served before the extension had elapsed. This was all-sufficient, as citation was in time.

On the Merits.

2. CONTRACTS — ACTION — PLEADING — EVIDENCE.

Plaintiff claimed damages from the defendant for an alleged violation of the contract on which it declared on the specific ground set up. The action was not one for an account. Defendant unsuccessfully objected to the introduction of testimony on any other issue than that raised by the petition. The ruling of the court on that point was erroneous, and all evidence outside of that issue is disregarded.

3. CORPORATIONS—AUTHORITY OF MANAGER—RATIFICATION.

The district court rejected plaintiff's demand, and that judgment is affirmed. The defendant acted under instructions from plaintiff's manager, who had been permitted by the corporation to have full control for years over its general business. It claimed to have reserved in the contract referred to "the right to say when its rice should be milled and sold." It never as a corporation exercised that reserved right, but permitted its manager to determine for it when this should be done. It is too late for the plaintiff under the circumstan-

ces to question, to defendant's prejudice, the authority of its manager to act in the premises.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by the Mayville Canal Company, Limited, against the Lake Arthur Rice Milling Company, Limited. Judgment for defendant, and plaintiff appeals. Amended and affirmed.

Pujo, Moss & Sugar, Jackson Henry Heinen, and Robert Lynn Batts, for appellant. Sompayrac & Toomer and McCoy & Moss, for appellee.

On Motion to Dismiss.

BREAUX, C. J. Appellee's grounds to dismiss are that the order for an appeal was moved for orally in open court on August 8, 1906, and was granted in open court; that the cause was tried and judgment pronounced during the month of April, 1906; that the term of court expired July 2, 1906; that as a result the order of appeal was granted at a term subsequent to that in which the cause was tried and judgment rendered; that the appeal should be dismissed for want of citation and petition.

Appellant urged, in answer to this motion of appellee to dismiss, that the district court has no terms; that it holds sessions continuously, and that in this instance it held session until August 8, 1906, when the appeal was taken; that article 117 of the Constitution orders the district court to hold a continuous session; that in any event the appellant secured an extension of the return day, which cures all defects (if defect there was).

The following is an excerpt from the order of the court regarding the beginning of the term, to which appellant invites our attention:

"To wit: In the parish of Calcasieu, on the first Monday after the 1st day of January, and

the third Monday after the 4th of July, of each year; in the parish of Cameron, on the first Tuesday after the 4th of July, and the second Tuesday in the month of December, of each year."

This is the only order there is regarding terms of court in the parish of Calcasieu. The judge has not fixed the day on which the term shall terminate. Only the beginning of the term is fixed. He has in effect substantially reserved to himself the right to open his court whenever he deems it proper for the dispatch of business. He has made no attempt by the order to fix the term of the court within the meaning of article 573 of the Code of Practice, which under former laws provided for monthly terms.

The minutes before us show that the court did not adjourn its term on the 7th of July, 1906, as stated by plaintiff in his motion. On the 7th day of July, 1906, it adjourned to the 21st day of that month, and the adjournment continued to the 8th of August. On that day the court adjourned to the 1st day of October, rendering it evident that the judge had not intended and did not intend to fix a particular time for the adjournment of any term. Moreover, even if there was a subsequent term of the court, the appellant met the objection to the appeal here urged in the motion to dismiss by having a citation of appeal served before the expiration of the return day of the appeal. The order of appeal was entered in open court, and citation upon that order was regularly served.

A similar service was made in case of Prudhomme v. Edens, Adm'r, 6 Rob. 64. The judge had allowed a motion to be made at a subsequent term of his court. A citation having been served on the appellee and the other substantial requisites having been complied with, the court held that there was not sufficient ground to dismiss the appeal. The appellee had had all the defenses he would have been entitled to, had an ordinary petition of appeal been filed.

It was decided in De St. Avid v. Pichot, 3 La. Ann. 6, that an appeal applied for by motion at a term succeeding the term at which the judgment was rendered will not be dismissed on the ground that the application should have been by petition in the ordinary form, and not by motion; that it was all-sufficient if the appellee was cited. De St. Avid v. Pichot, 3 La. Ann. 6.

Wheeler v. Peterkin et al., 38 La. Ann. 663, is another case in point. The order of appeal had been granted by motion in open court at a different term of the court. The appellee having been duly cited on this motion, the court upheld the appeal.

To the same effect is Widow De St. Romes v. McCarty, 21 La. Ann. 277; Pratt v. Erwin, 5 La. Ann. 115; State ex rel. City of New Orleans v. Judge, 21 La. Ann. 734.

We have not found any merit in the motion.

For reasons assigned, the motion to dismiss the appeal is overruled.

## On the Merits.

NICHOLLS, J. Plaintiff seeks a judgment against defendant in the sum of $35,076, with legal interest, for this:

That on the ——— day of September, 1904, the defendant entered into a contract with it wherein it agreed to make certain advances on petitioner's crop of rice for the season of 1904, said rice to be stored, milled, and sold under certain terms, conditions, and instructions to be given by petitioner, as will more fully appear from a copy of said contract hereto attached and made part hereof. That in accordance with the provisions of said contract petitioner stored in the mill and warehouses of the said Lake Arthur Rice Milling Company, Limited, during the season of 1904, 25,865 sacks of rough rice, and has received thereon in advances the sum of $35,507, or an average of $1.37 per sack. That petitioner reserved in said contract the right to say when said rice should be milled and

sold, and pursuant to its said right petitioner instructed the Lake Arthur Rice Milling Company, Limited, on August 15, 1905, to mill its rice, and on October 2, 1905, petitioner again instructed the said rice milling company to sell said rice at the then prevailing market price, which it has failed to do.

Petitioner alleges that on the 2d day of October, 1905, when its rice was ordered sold, the Lake Arthur Rice Milling Company, Limited, should have had in its possession 23,700 sacks of said rough rice belonging to petitioner, of the then market value of $2.85 per sack, and because of the failure of the said rice milling company to carry out said instructions, and to comply with the terms and conditions of said contract, petitioner has been damaged in the difference between the said market value of said rice and the advances received thereon; i. e., in the sum of $1.48 per sack, or in the total sum of $35,076.

That under the provisions of said contract the Lake Arthur Rice Milling Company, Limited, had no right to mill and sell said rice without instructions from petitioner, and petitioner now charges that the failure of the Lake Arthur Rice Milling Company, Limited, to comply with petitioner's said instructions as to the milling and sale of said 23,700 sacks of rice was due to the fact that said rice milling company had, long prior to the receipt of said instructions, sold or otherwise disposed of the rice without petitioner's knowledge.

That the said Lake Arthur Rice Milling Company, Limited, has recognized petitioner's right to fix the time for the milling and sale of said rice, in that, when it was called upon to mill and sell same, it remained silent, admitting its liability to petitioner in damages, in the amount of the losses above stated, for its wrongful, tortious, and illegal breach and violation of said contract. That the said Lake Arthur Rice Milling Company, Limited, was duly placed in default, and particularly

by petitioner's said demands on August 15, and October 2, 1905, which were made in writing. That amicable and ineffectual demand has also been made.

Defendant answered. After pleading the general issue, it admitted: The execution of the contract, which was annexed. That plaintiff had delivered to it 25,865 sacks of rough rice to be milled and sold pursuant to said contract. That on the faith of said contract, and the shipments of said rice made to it thereunder, it loaned and advanced to the plaintiff company $37,095.47, with interest, as provided in said contract. That pursuant to said contract, acting under the instructions of the plaintiff, acting through its proper officers and manager, defendant milled and sold the rice shipped to it, excepting a small quantity, which at this time remains unsold and on hand, through no fault of defendant.

That the milling and sale of said rice was done in accordance with the orders and instructions of plaintiff, acting through its proper officer, and that plaintiff and its officers, and particularly S. J. Johnson, secretary and manager, had full knowledge of the transactions. That said Johnson had access to and did repeatedly examine the books of defendant, showing the milling and sales of said rice. That he approved and ratified the same, and that defendant, on the consummation of the sales of rice, mailed to the plaintiff company, at its domicile, account sales, showing fully the disposition thereof. That the plaintiff company ratified and approved the sales, and is now estopped from complaining of same in any manner.

It filed later a supplemental petition, in which, after reiterating its former averments, it alleged: That during the fall of the year 1904 plaintiff company, acting through Samuel J. Johnson, its secretary and manager, instructed and ordered defendant company to mill and sell certain portions of the rice that

had been delivered by the said plaintiff. That defendant was specially instructed by said S. J. Johnson to mill the rice, so as to always keep on hand in a clean state from 3,000 to 5,000 pockets ready for ·market. That, later on in the year 1904, plaintiff, acting through its aforesaid secretary, again instructed defendant company to sell more of its rice. That during the beginning of the year 1905, and continuing on at various times, acting through the aforesaid secretary and manager, plaintiff ordered and instructed defendant to sell other lots and parts of plaintiff's rice that had been delivered under the contract. That, acting under the instructions of plaintiff, given through its aforesaid secretary and manager from time to time, beginning with the delivery of said rice, and continuing up to and including July 2, 1905, defendant sold and delivered large quantities of the clean rice of plaintiff, aggregating approximately 25,508 pockets, and mailed and delivered to the Mayville Canal Company, Limited, addressed to said company at Jennings, La., account sales, showing the disposition of 22,976 pockets; there being 2,522 pockets sold prior to that date, but for which accounts sales had not been received.

Frequently, from the beginning of this transaction, at the request of S. J. Johnson, secretary and manager of plaintiff company, defendant furnished plaintiff statements of the account existing between plaintiff and defendant, in addition to the account sales rendered. That the said statements of account showed that the Mayville Canal Company had been credited with the proceeds from the sale of various lots of rice. That S. J. Johnson, secretary and manager of plaintiff company, had access to it, and did examine the books of defendant company at its office in Lake Arthur, La. That he did frequently make a special examination of the accounts of the Mayville Canal Company, Limited, with and in the presence of John McDaniel, bookkeeper for defendant company. That the said books and account showed the sales of such portions of the rice sold between the dates above set forth at the time of such examinations. That after delivery of the account sales from time to time after the examination of the account of the Mayville Canal Company, Limited, said S. J. Johnson, its secretary and manager, complimented and congratulated defendant company, through its officers, upon the good prices it had obtained for the rice so sold, being the same rice referred to in plaintiff's petition. That the said congratulations were made by S. J. Johnson particularly at a meeting of the stockholders and board of directors of defendant company, in its offices at Lake Arthur, La., on or about June 2, 1905, thereby ratifying and approving said sales so made. That S. J. Johnson was, during the time the above transactions occurred, a director of the Lake Arthur Rice Milling Company, Limited, had access to the books of the corporations, examined them, heard the reports of the officers at meetings of the board of directors and stockholders, and well knew that, pursuant to instructions given defendant company by him, it was milling and selling at the then prevailing prices delivered under the contract plaintiff has declared upon. That on or about January 17, 1905, E. F. Rowson, president of the Mayville Canal Company, Limited, ordered and instructed defendant to sell about 3,000 pockets of its clean rice at 1½ cents per pound. That pursuant to said instructions defendant did sell 1,410 pockets thereof, and mailed account sales thereof to plaintiff company, and shortly thereafter sold the remainder, about 1,600 pockets, at a higher price than agreed on, and rendered account sales therefor. That subsequent to instructions given by said Rowson, and before shipment of the rice, S. J. Johnson, secretary and manager of plaintiff company, ratified and approved said sale. That in the early part of

April, 1905, at the place of business of defendant in Lake Arthur, La., S. J. Johnson, acting in the capacity of secretary and manager of the plaintiff company, ordered and instructed defendant to mill and sell a large quantity of plaintiff's rice, delivered under the contract declared upon. That, acting pursuant to said instructions, defendant did mill and sell, as instructed by said S. J. Johnson, approximately 17,787 pockets of clean rice, and furnish by mail to the Mayville Canal Company, Limited, at Jennings, La., account sales therefor. Defendant further avers that between the time that instructions were given—that is, in the early part of April, 1905, up to and including June 30, 1905—S. J. Johnson, secretary and manager of the Mayville Canal Company, Limited, did have access to and examined the books of defendant. That he did examine between said dates, from time to time, the account of plaintiff company, and that same showed the sales of the rice referred to above. All of said sales were ratified and approved by plaintiff through said Johnson. That the plaintiff, for all of the above reasons, and for the further reason that, after its officers examined the books of defendant, showing the sales of rice accounted for, and after receipt and delivery to it of statements of the account showing credits for the proceeds of said rice as shown by the account sales, and having accepted the benefit thereof, asked and received additional advances of money from defendant on account of said sales, plaintiff is estopped from complaining of the milling and sale of the rice accounted for above. That said Mayville Canal Company, Limited, for all of the above reasons, is estopped from denying that defendant milled and sold said rice without authority, which plea of estoppel is especially urged at this time.

That when the plaintiff was informed by defendant that it was milling and selling said rice in the months of April, May, and June, 1905, and furnished with statement of account showing credits therefor, also furnished account sales therefor, and failed to object to such actions, immediately its acquiescence or silence amounted to a ratification, which plea of ratification defendant urges at this time. Defendant admits that on or about August 15, 1905, the plaintiff company ordered it to mill its rice, and on or about October 2, 1905, that it ordered defendant to sell said rice, but avers that both of said notices were given with the knowledge that defendant had long previous thereto, acting under instructions of plaintiff, as previously set forth, milled and sold large quantities of plaintiff's rice. That defendant acted strictly in accordance with the said two last instructions, and sold 5,922 pockets of clean rice, as shown on account sales that were promptly mailed to plaintiff. Defendant further avers that it has faithfully and fully complied with its contract, and accounted for all rice delivered to it, all of which will be shown on the trial hereof. That defendant annexes hereto and makes part hereof an itemized statement, marked "A," showing all advances and charges it has made against the Mayville Canal Company, Limited, on the contract declared upon, and that the said itemized statement also shows the net proceeds of the rice sold, which net proceeds have been duly credited to the account of the Mayville Canal Company, Limited, after deducting all milling charges, etc. Defendant further avers that it has paid to the Mayville Canal Company, Limited, the full balance due upon this transaction. Defendant alleges that since filing its original answer herein it has learned that the Mayville Canal Company, Limited, was not at the time of pledging said 25,897 sacks of rough rice, or at any other time, the owner of more than one-half of same, and is therefore under no circum-

stances entitled to recover damages for rice that it did not own.

In view of the premises, defendant prays that the demands of the Mayville Canal Company, Limited, be rejected and dismissed, at its costs. It further prays for all orders necessary in the premises, and for full, general, and equitable relief.

The plaintiff in this suit did not call upon the defendant for an account. The defendant excepted to all the evidence found in the record which had in view a settlement of the accounts between each other. The court should have sustained its objection. We must disregard it for the purposes of this present action, which is a direct action brought by the plaintiff against the defendant for damages for its violation of the particular contract upon which it has declared on the specific ground set up in the petition.

Under that contract the defendant company agreed to advance and furnish to the plaintiff from 75 cents to $1 per sack according to relative values for each sack of rice on the crop of 1904, raised and placed in warehouse by the plaintiff; said money so loaned and so advanced to bear interest from date advanced at the same rate which it was paying for borrowed money at such dates, and said money so advanced to be represented by promissory notes executed by the plaintiff. The contract stipulated that the rice warehouse was pledged, assigned, and transferred to the defendant as security for the money advanced, subject, however, to the agreement that the rice so advanced upon should be milled at defendant's mill at Lake Arthur in the usual and customary manner and terms, except that the charges for the same should be 25 cents per barrel of 162 pounds, the mill making no return for sacks, commission should be 3 per cent. unless handled and sold by the plaintiff company, in which case there should be no commission charges.

One of the clauses of the contract was that "the plaintiff company should at all times have the right to say when such rice should be milled and sold, but should not insist on its being milled faster than 600 barrels per day." The contract further stipulated that the "advancements shall in no case run longer than 12 months."

On the trial of the case plaintiff introduced in evidence a copy of its charter, which appears to have been recorded on the 19th day of September, 1896, in the Book of Conveyances in the office of the clerk of the district court for the parish of Calcasieu.

One of the paragraphs of article 6 of the charter reads as follows:

"No sale, purchase or incumbrance of this corporation shall be made without first being authorized by a majority vote or written consent of the majority of all the stock. No purchase or sale of any personal property to an amount of $500 or more to be made without written consent of a majority of stock, unless otherwise authorized at the regular annual or a special meeting of the stockholders."

On the trial of the case and in this court the plaintiff urges that no such written consent had ever been given to any one to sell the personal property of the corporation to an amount over $500; also that the defendant had sold "of its own motion," and without instructions "the rice stored in its warehouses in violation of its own right to say when such rice should be milled and sold."

Defendant contends that the clause in the charter referred to was not intended to apply to a sale in due course of business of the products of the plaintiff's properties, but to movables not "held for sale," but only to be sold under some unexpected contingency; that, besides, it was not held to know of this provision of the charter, as it was recorded in the wrong book in the recorder's office. It further urges that, from the time of plaintiff's creation up to the time that it took action for the purpose of bringing this suit, Mr. Johnson had always had, as manager of

the corporation, full and unlimited control over all its general business, to the knowledge and with the acquiescence of all parties concerned therein; that his actions had in all respects been approved of and ratified; that the plaintiff's corporation had no by-laws, and that the only meeting held was the one which it had resorted to, to serve as a basis for the bringing of the suit; that it had never taken "corporate action" looking to fixing the time of the sale of the rice in its hands until (acting under the instructions of Mr. Johnson, the manager of the corporation, with whom it had dealt in all things referring to this contract as its duly authorized agent) it had sold the rice, whose sale under such instructions it is herein attempted to be held responsible to in damages.

It is not pretended that Johnson has not been constantly acting for years past as the manager of the plaintiff corporation, and with the general management of its business, to the knowledge of and with the approval of the plaintiff corporation. The contract declared upon in this suit nowhere appears to have been authorized at a meeting of the stockholders of the corporation or of its board of directors, and yet the authority of Johnson to deal with it in all its features is and has been conceded as a matter of course. It was he who borrowed the money, which the corporation received, and of which it has derived full benefit. It is late in the day, and under the circumstances of this case, for plaintiff to dispute and call in question the authority of Johnson, its manager and a holder of a large part of its stock, to simply instruct the defendant from time to time to mill and sell the rice in its hands. Johnson denies that he ever gave such instructions; but the trial judge has obviously held to the contrary, and his conclusions on that subject are shown herein by a great preponderance of evidence. We are not only of the opinion that he gave the authority

to defendant which the latter claims to have received, but that he was advised at all times of what the defendant company had done and was doing.

The objection which the plaintiff raises in this case is, not that the defendant company was not its agent for the purpose of milling and selling its rice, but that being such agent it sold the rice without corporate instructions at the right time. That defendant was plaintiff's duly authorized agent, milling and selling agent, is disclosed by the written contract on which plaintiff declares, and by the allegations of its petition. The only question before us is whether Johnson had authority as manager to determine the particular time at which different lots of rice should be sold. Under the evidence in the record as to the long course of business between the parties, we think he was. He was certainly authorized to do so until the plaintiff company by corporate action should have availed itself of its reserved right to fix the time when the rice should be sold. Until it did this formally, defendant, by plaintiff's conduct, was justified and warranted in dealing with Johnson in this respect as its duly authorized agent. We think the conclusions reached by the trial judge are correct, except in so far as he reserved to the plaintiff the right to sue for interest unlawfully charged in a separate and proper proceeding. Defendant has prayed that the judgment be amended in that respect. We think it is entitled to have the judgment amended as prayed for. As we have said, the state of the accounts between the plaintiff and the defendant is not involved in this litigation, and the judgment of the court should not extend beyond the exact issue raised in the case.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is, hereby amended, in so far as it reserves

to the plaintiff the right to sue for interest illegally charged in a separate and proper proceeding, which portion of the judgment is hereby set aside and annulled, and, except in so far as the said judgment is so annulled and set aside, the judgment appealed from is hereby affirmed.

## On Rehearing.

LAND, J. This cause was fixed for trial on March 7, 1907, and the answer to the appeal, having been filed on March 5, 1907, came too late. Code Prac. art. 890. Hence the defendant and appellee was not entitled to the reversal of any part of the judgment.

It is therefore ordered that our former decree herein be so amended as to affirm the judgment rendered by the district court, and that, with this amendment, the application for a rehearing be refused.