(80 South. 72)
**LUTZ v. VAN HEYNIGEN BROKERAGE CO.**
**(1 Div. 28.)**

(Supreme Court of Alabama. Nov. 14, 1918.)

1. WAR ⬮11—ALIEN ENEMIES.

As affecting civil rights and liabilities, it is not nationality, but the carrying on of business or residence in an enemy country, that constitutes one an alien enemy, and an alien, subject of Germany, residing in the United States, becomes an alien enemy on internment, under U. S. Comp. St. 1918, § 7615.

2. APPEAL AND ERROR ⬮900—PRESUMPTION —ALIEN ENEMY.

The court on appeal cannot presume that the court or any of its agencies in the administration of justice would have discriminated against a plaintiff on account of his being an alien enemy.

3. APPEAL AND ERROR ⬮966(1)—SCOPE OF REVIEW—DENIAL OF CONTINUANCE.

The denial of a continuance will be reversed only where there is an obvious abuse of the discretion of the trial court.

4. WAR ⬮10(2)—EFFECT ON ACTION—DENIAL OF CONTINUANCE—ALIEN ENEMIES.

Denial of stay of proceedings, in effect an application for a continuance on account of the war between the United States and Germany, to an alien enemy plaintiff who has been interned, held not an abuse of discretion, especially where it did not appear that plaintiff was a necessary witness in his own behalf.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Action by E. Lutz against the Van Heynigen Brokerage Company. Plaintiff moved for a stay during the war between the United States and Germany. The motion was overruled, and plaintiff took a nonsuit, and now appeals. Affirmed.

Gregory L. & H. H. Smith, of Mobile, for appellant.

Stevens, McCorvey & McLeod, of Mobile, for appellee.

SAYRE, J. Plaintiff, appellant, brought this action in May, 1915. At and prior to that time, plaintiff, a German subject, resided and did business at Pensacola, Fla. A judgment for defendant was on plaintiff's appeal reversed by this court, April 26, 1917. 75 South. 284.[1] When the cause came on again for trial in the circuit court, October 27, 1917, it appeared that plaintiff had been interned as a dangerous alien at Ft. McPherson in the state of Georgia, and on that ground, and because his presence as a party and a witness was necessary to the proper conduct of his case, plaintiff moved the court that the cause be stayed for the duration of the war between the United States and Germany. This motion was overruled, whereupon plaintiff took a nonsuit with a bill of exceptions.

[1] As affecting civil rights and liabilities, it is said to be clear law that it is not

his nationality, but the fact that he carries on business or voluntarily resides in an enemy country, that makes an alien enemy. Porter v. Frendenberg, 1 L. R. K. B. Div. [1915] 857. Therefore plaintiff was not to be considered as an alien enemy prior to his internment; but consideration of the causes for which such internment may have been ordered (U. S. Comp. Stat. 1918, West Pub. Co. Ed., § 7615) lead to the conclusion that plaintiff's internment reduced him substantially to the status of an alien enemy as defined above. In Caperton v. Bowyer, 14 Wall. 216, 20 L. Ed. 882, the Supreme Court of the United States stated the rule to be universal and peremptory that, subsequent to the commencement of hostilities, enemy creditors were incapable of prosecuting any action in the tribunals of the other belligerent until after the restoration of peace. In a number of cases, however, which have arisen in England and in this country during the present war, it appears to have been held uniformly that actions instituted by plaintiffs, who subsequently became alien enemies, must be suspended until peace is declared. Porter v. Frendenberg, supra; Plettenberg v. Kalmon (D. C.) 241 Fed. 605; and Stumpf v. Shreiber Brewing Co. (D. C.) 242 Fed. 80, where is cited another English case to which we have not access. In those cases it was so ordered on the motion of the defendants. The reason and policy of such judicial action is that, if an alien enemy obtains judgment, he thereby adds to the resources of the power of which he is a subject. Cases, supra.

[2-4] In the present case, it has been observed, an alien enemy plaintiff invokes the power of the court to order a suspension for the duration of the war. Plaintiff, by reason of his nationality, apprehends a serious handicap in the prosecution of his suit, and suggests on appeal that the policy which allows him to further maintain an action begun before a state of war was declared should in fairness grant his motion for a suspension, and this suggestion he seeks to reinforce by reference to the generally unsatisfactory nature of a showing for an absent witness and the necessity for his personal presence at the trial. This statement of plaintiff's contention and the adjudications to which we have referred suffice to show that the policy with which those adjudications were concerned has no application to the question raised by plaintiff's motion in the case under consideration. That peculiar policy laid thus out of view, we do not perceive any sufficient reason for holding that the trial court in its action upon plaintiff's motion should have treated it differently from the motion of any other plaintiff who, pending the trial of his suit, is so unfortunate—we speak not of the fortune of the government, whether good or bad—as to subject himself to confinement in a "penitentiary, prison, jail, military camp or other place of detention." We cannot assume that upon a trial the court or any of its agencies in the administration of justice would have discriminated against plaintiff on account of his nationality nor is any intimation to that effect to be found in the motion. We have, then, the case of a plaintiff who asks for a continuance—the trial court and the parties appear to have considered plaintiff's motion as one for a continuance for the term as well as for a stay for the duration of the war—on the grounds stated above, separate and apart from the prejudice which plaintiff feared on account of his nationality. The rule was long established in this state that the grant or refusal of a continuance rested in the sound discretion of the trial court, and was not reviewable on error. White v. State, 86 Ala. 69, 5 South. 674. It seems now that the appellate courts will reverse where an obvious abuse of discretion is shown (Kelly v. State, 160 Ala. 48, 49 South. 535), and this rule or some more liberal adaptation of it is the law of the states generally. 9 Cyc. 159. It is no small advantage to the just cause to have the personal presence of a witness, and, unquestionably, it is an important privilege of a party to be present at the trial of his cause, which should not be denied unless for weighty reasons; but neither of these considerations is indispensable to a fair trial, and the rule with respect to the discretion of the court must be observed. Considered from this viewpoint, we are unable to say that there was an abuse of discretion. Plaintiff had been present at a former trial of the cause. It then appeared that the contract for breach of which he was suing had been negotiated by his agents; it did not appear that plaintiff knew much of the facts upon which he relied. His testimony had been preserved and was accessible. The convenience of other parties was to be considered as well as that of plaintiff. Upon the whole we are unable, as we have said, to declare an abuse of discretion, and the action of the trial court must be affirmed.

Affirmed.

McCLELLAN, MAYFIELD, and GARDNER, JJ., concur.