78 So.2d 306

Mary Lou PILCHER

v.

Erzsebet (Fleischner) DEZSO et al.

4 Div. 797.

Supreme Court of Alabama.

Jan. 13, 1955.

Rehearing Denied March 10, 1955.

J. Hubert Farmer, Dothan, for appellant.

W. G. Hardwick, Dothan, for appellees.

STAKELY, Justice.

Erzsebet (Fleischner) Dezso and others (appellees), next of kin of Margaret Hermine Pilcher, deceased, filed their bill to set aside a certain deed executed by Frank Pilcher, her surviving husband and executor of her last will and testament, and to have the real estate embraced in the deed sold for division among the next of kin as remaindermen of her estate. Copy of the will is attached to the bill as an exhibit and made a part thereof. The pertinent provisions of the will will be set out later in this opinion. There is also attached to the bill as an exhibit and made a part thereof the deed to which reference has been made. The court overruled the demurrer to the bill filed by Mary Lou Pilcher (appellant) and from that decree she brings this appeal.

The appellant bases her right to reversal on two theories, (1) that "it affirmatively appears from the bill that the complainants are enemy aliens of the United States of America and as such have no legal or equitable standing in this court and no legal or equitable right to bring this suit" and (2) that "under the terms and provisions of the will Frank Pilcher, the husband of testatrix and the executor of her last will and testament, was given the absolute power of disposition of the property involved without the necessity of any court order and this power was not limited to the necessities for his support, comfort and well-being."

I. It is the theory of the appellant that the bill shows on its face that since the appellees, who filed the bill, are residents of the country of Hungary and, therefore, reside in a satellite state of the Soviet Group, the complainants should not be allowed to prosecute their suit in the courts of Alabama. In § 1, Title 47, Code of 1940, it is expressly provided that an alien, resident or nonresident, may take and hold real property in this state. It is insisted, however, that since the complainants are residents of a country engaged in what is termed a "cold war" with this country, the statute does not apply and the present suit should be abated. We are entirely in sympathy with the idea that property located in this state should not be transferred to residents of the country of Hungary so as to aid Hungary in its efforts with the other Soviet countries to injure this country in its economic or material resources and to overthrow the government of the United States through the teachings of the International Communist Party. Our cases hold that the courts of this state will not allow an alien enemy to obtain a judgment in the courts of this state because he thereby adds to the resources of the power of which he is a subject. Lutz. v. Van Heynigen Brokerage Co., 202 Ala. 234, 80 So. 72.

There is a difference between allowing the appellees to attempt to establish their title to land in this state and allowing the proceeds of land sold for division to be distributed to residents of Hungary. It is the distribution of such proceeds which should be safeguarded.

We do not feel that the allegations of the bill as against demurrer show any reason for abatement of the suit. The propriety of distribution of proceeds of the sale of the land, if any, should be determined when the case reaches that stage, if it ever does. There may be the danger that if distributive shares of the estate should be turned over to residents of Hungary the government of Hungary would confiscate the same and not only would the intention of the testatrix be thwarted but the government of Hungary thereby aided.

The State of Pennsylvania like this state has no statute covering the present situation. But in Pennsylvania the courts have impounded funds of aliens behind the Iron Curtain without benefit of legislation on the theory that it is the duty of the court to see to it that money in the hands of the court reaches the true owner and is not diverted by his government into its own treasury. The Pennsylvania rule dates back to the days of Hitler and is presently used in cases of legacies or distributive shares belonging to residents of Russia and its satellites. In Re Stede's Estate, 38 Pa.Dist. & Co.R. 209, the court directed the funds of an estate to be paid to the Clerk of the Orphans' Court for the benefit of the legatees of an estate, subject to the further orders of the

court, saying that "the people unfortunate enough to be involved are without the right to have or hold money except at the pleasure of the autocrat and all the assets of the German people are in a state of semiconfiscation or impressment for war purposes and this whether the owners of the assets are willing or not. * * * Indeed if notice were mailed to these legatees apprising them of this embarrassment of riches, there is no certainty that the communication would not be opened by some authority and pressure put upon them to acquire the funds for the purpose of confiscation." The court goes on to say that "If nobody else is going to protect them, the law of Pennsylvania will." Later the principle of In re Stede's Estate, supra, was applied in Re Zielinski's Estate, 73 Pa.Dist. & Co.R. 81, where the decedent died in 1948 and his heirs resided in Poland.

We understand that the practice of impounding distributive shares belonging to persons behind the Iron Curtain is now also in effect without legislation in Massachusetts, Michigan, Missouri, Nebraska and Vermont. Southern California Law Review, Vol. 25, No. 3, p. 313. We are not, however, aware of any decision by the courts of last resort in the foregoing states approving or disapproving the practice.

Accordingly in the instant case the court acted correctly in overruling the demurrer and in holding that the bill did not show on its face that the suit should be abated.

II. The deed executed by Frank Pilcher as surviving husband and executor of the last will and testament of Margaret Hermine Pilcher was executed pursuant to the following pertinent provisions of the will:

"I give and bequeath to my husband Frank Pilcher all my property and consisting of real estate, personal property of whatever kind or description, cash, stocks, bonds, and jewelry, subject however, to the conditions as hereinafter set out.

"It is my will and I so declare it that my said husband, Frank Pilcher, shall have the full use and enjoyment of all of said property so long as he shall live; and,

"That if it should become reasonably necessary for him to sell any part or all of said property so bequeathed for his reasonable and proper maintenance, care and well-being, including among other, proper medical, nursing and hospital care, with my husband, the said Frank Pilcher, to be the sole judge as to the necessity for such maintenance, care and well-being, then in such event, he shall have the right to sell and dispose of any and all of said property so bequeathed in such way and manner and at such time or times as in his judgment and discretion might be best; and all without the necessity of obtaining any court order or decree allowing and permitting such sale or sales. And I do hereby empower my said husband, Frank Pilcher, with full authority to execute any and all necessary bills of sale or deeds of conveyances to the purchaser or purchasers of any of such property so bequeathed, conveying full and complete title thereto, with full possession and all rights and privileges incident thereto.

"It is my further will and desire and I so declare it, that his sister, Mary Lou Pilcher, shall be taken care of the rest of her life. It is my request that so long as my husband, Frank Pilcher, lives, he shall look after and properly take care of said Mary Lou Pilcher. As to how and in what manner he shall do this, I leave to the good judgment and discretion of my said husband.

"It is my will that if my husband, Frank Pilcher, should die before his sister, the said Mary Lou Pilcher, should die, and if there remains unused, unsold or unexpended at his death as much as or more than Three Thousand Dollars ($3,000.00) of my said estate, then in such event, a $3,000.00 trust fund shall be set up with that amount of cash to be deposited in the First National Bank of Dothan, Ala-

bama, by a succeeding Executor appointed by order of the Judge of Probate of Houston County, Alabama, at such time, and by such Executor paid to the said Mary Lou Pilcher in monthly installments of $25.00 each, so long as she shall live, or so long as any of said fund shall remain unexpended for such purpose.

"If at the time of the death of my husband, Frank Pilcher, his said sister, Mary Lou Pilcher, is living as aforesaid, and there is more than Three Thousand Dollars remaining of my estate; or if at the death of my husband, Frank Pilcher, his said sister Mary Lou Pilcher, is already dead, and there shall remain un-used, unsold, or un-expended, any part of my estate, then it is my will in the first event, that such portion of my estate over and above said sum of Three Thousand Dollars, or in the second event, that portion of my estate remaining un-used, un-sold or un-expended, shall go to my next of kin in such parts and portions as provided by the descent and distribution laws of the State of Alabama; such next of kin being, so far as I know, some nieces and nephews of mine now residing in the City of Budapest, in the country of Hungary."

The appellant is claiming the property involved under the deed to which we have referred, while the appellees are claiming that the deed is void and that as remaindermen they are the owners of the property. The life tenant, Frank Pilcher, is dead. Primarily this litigation is to recover the estate of remaindermen after the death of the life tenant. Winn v. Winn, 242 Ala. 324, 6 So.2d 401. Obviously to accomplish this result the deed must be set aside. Williams v. Spears, 235 Ala. 611, 180 So. 266.

There is a good deal of discussion in briefs as to the extent of the powers granted to Frank Pilcher under the will, it being contended by appellant that under the doctrine enunciated in Cain v. Cain, 127 Ala. 440, 29 So. 846, 847, the power conferred on Frank Pilcher cannot be narrow-

ly confined to the purposes of sale expressed in the will. In that case the court said, "We hold that, though the power is expressed to be for a purpose, its exercise is bounded only by the donee's judgment and discretion in fulfilling that purpose, and that her discretion is not subject to be controlled by the courts." Cain v. Cain, supra.

But there is a point beyond which the donee of the power cannot go in the execution of the power. In Burton v. Jones, 212 Ala. 353, 102 So. 807, 808, the executor was given the power of sale " 'with or without an order of court, as he may think best to the interest of the estate.' " The court said, "From this it results that he was given a discretion as to whether a sale should be made, and his judgment was conclusive if exercised in good faith. * * * His exercise of the power will be interfered with only for fraud or manifest abuse of discretion, neither of which is averred or proved in this case." See also Winn v. Winn, supra; Fillmore v. Yarbrough, 246 Ala. 375, 20 So.2d 792; Yockers v. Hackmeyer, 203 Ala. 621, 84 So. 709.

This brings us to the allegations in the instant bill which we, of course, assume to be true on demurrer. They show bad faith and fraud, participated in by Mary Lou Pilcher, the grantee in the deed, and the appellant here. The allegations of the bill show that Frank Pilcher conveyed the real estate to his sister Mary Lou Pilcher within a few days after the death of the testatrix and without consideration. It is alleged that Frank Pilcher was not at the time such conveyance was executed in need and that he had sufficient assets and money of his own with which to provide for his maintenance and support and that he was living in a house on the real estate involved which was owned by the testatrix. It is further alleged that there were substantial rents from the real estate and that there was a large sum of money, jewelry and bonds and other personal property which was more than sufficient to reasonably support and maintain Frank Pilcher and Mary Lou Pilcher. It is further al-

254

leged that the conveyance was made in bad faith and with intent to defraud the plaintiffs, the next of kin of testatrix. It is further alleged that Mary Lou Pilcher had notice that Frank Pilcher was disposing and conveying the real estate to her in bad faith with the intent and purpose of defrauding the plaintiffs who are the nieces and nephews and next of kin of Margaret Hermine Pilcher, deceased. It is further alleged that the foregoing conveyance is void and despite this that Mary Lou Pilcher is claiming all of the real estate by virtue of the deed executed as aforesaid. It is further alleged that "there is an actual controversy as to a justiciable question as between Mary Lou Pilcher and the plaintiffs and the other defendants and that this court ought to construe said will and the circumstances and conditions surrounding the execution of said warranty deed and determine the rights as between Mary Lou Pilcher and the other parties to this suit."

It is further alleged that on a determination by this court that Frank Pilcher was without authority and power to execute the conveyance to Mary Lou Pilcher and that the same is void, the land should be sold so that there may be a division of the proceeds between the next of kin and that the property cannot be equitably divided without a sale thereof.

The court acted correctly in overruling the demurrer to the bill of complaint. The rights of the parties with reference to the deed and a sale for division should be determined after proof is taken on the issues made by bill and answer. Betts v. Betts, 250 Ala. 479, 35 So.2d 91; Grisham v. Grisham, 251 Ala. 340, 37 So.2d 177; Fillmore v. Yarbrough, supra.

In view of the foregoing the decree of the court overruling the demurrer to the bill of complaint is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur, except that LAWSON and MERRILL, JJ., concur only in the result as to that phase of the opinion dealing with abatement of the suit.